## SUSAN JEUDE et al., Appellants, v. THOMAS B. SIMS et al.

### In Banc, May 4, 1914.

1. **SETTING ASIDE JUDGMENT: After Appearance to Hearing: Statute: Agreement to Continue.** Sec. 2101, Revised Statutes 1909, providing that when an "interlocutory judgment shall be made and final judgment entered therein against any defendant who shall not have been summoned as required by this chapter, or who shall not have appeared to the suit . . . such final judgment may be set aside, if the defendant shall, within the time hereinafter limited, appear, and by petition for review, show good cause for setting aside such judgment," does not entitle a defendant who appeared and filed an answer to the petition, to have said final judgment set aside on motion filed at a subsequent term, alleging, among other things, that judgment was obtained by plaintiffs in the absence of defendant, whose absence was induced by plaintiffs and upon an agreement that said cause would not be taken up for trial, but would be continued. Said statute has no application to a case in which defendant appeared and filed answer.

2. ————: ————: ————: **Irregularity.** A motion contemplated by Sec. 2121, Revised Statutes 1909, declaring that judgments "shall not be set aside for irregularity, on motion, unless such motion is made within three years" etc., must be one which is based upon an irregularity which is patent on the record, and not one depending on proof *dehors* the record. That statute does not authorize the setting aside of a judgment obtained in violation of an agreement to continue.

3. ————: **Motion to Set Aside Considered as Application for Writ of Error Coram Nobis.** A motion to set aside a final

Jeude v. Sims.

judgment on the ground that plaintiffs had agreed to continue the case and thereby defendants were tricked and misled, cannot be considered an application for a writ of error *coram nobis*. A motion in the nature of a writ of error *coram nobis* is granted by the court rendering the judgment for the purpose of correcting some. error of fact, but the fact must be such that had it been known at the time the judgment would not have been rendered, and a fact, which, nevertheless, was wrongly considered by the court in the makeup of the judgment. So that where the court was distinctly informed, by an application and affidavit for a continuance, that plaintiffs had agreed to a continuance by consent in consequence of which defendant made no preparation for trial, and after being so informed rendered judgment for plaintiffs, said judgment cannot be set aside at a subsequent term upon a motion in the nature of a writ of error *coram nobis* setting forth such agreement and its breach.

*Held*, by LAMM, C. J., dissenting, (1) that the very existence of a motion in the nature of a writ of error *coram nobis*, whereby a simple and speedy remedy is obtained, imports a growth in the law; and, as indicating the expanding use of such writ, the courts of this State have used it, as indicated by many decisions, to afford relief against fraud in their own judgments after the expiration of the term, and thereby to avoid the expense and delay of a formal suit in chancery; and (2) that the motion, timely filed, is flexible enough to adjust itself to the 'equitable feature of setting aside a judgment, after the term, where the rights of third parties have not intervened, which was obtained by means of a violation of an agreement to continue, whereby the defendant was tricked into absence and out of his defense, unless the remedy is lost by neglect or laches.

4. ———: Motion to Set Aside: Considered as Bill in Equity. A motion to set aside a judgment cannot be considered a bill in equity to set it aside on the ground of fraud. To invoke equity an independent action must be brought.

5. ———: ———: ———: Filing Answer. The fact that the plaintiffs filed an answer to defendant's motion to set aside the judgment, does not preclude them from questioning its sufficiency as a bill in equity to set aside the judgment for fraud, where both sides proceeded as if the motion was an application for a writ of error *coram nobis*.

6. ———: ———: Not Preserved in Bill of Exceptions. If the motion to set aside the judgment, filed after the expiration of the term, not on the ground of irregularity, but because of facts *dehors* the record, was a simple motion it is of no con-

sequence whether it is brought before the appellate court, although sustained, for the record shows the court had lost jurisdiction to entertain it; and, if it be considered a motion in the nature of a writ of error *coram nobis* or a bill of equity, it is in the nature of a pleading, and is properly preserved as a part of the record proper.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Charles A. Killian,* Judge.

Reversed.

*Jere S. Gossom* and *W. O. Anderson* for appellants.

(1) This proceeding is founded on a motion in the nature of a writ of error *coram nobis,* or rather the motion which, in modern practice, is substituted for it, whereby it is sought to set aside and vacate the judgment rendered for a fact which was well known to the court, the respondent and his attorneys at the time said judgment was rendered. A writ of *coram nobis* is addressed to the court itself, where the record is, and lies to correct some latent matter of fact unknown to the court, and which, if known, would have prevented the judgment rendered. Neither a motion *coram nobis,* nor the motion under the statute which is now substituted for it, will lie to vacate a judgment for the reason assigned in the motion filed in this case. Marble v. Van Horn, 53 Mo. App. 363; Hadley v. Bernero, 103 Mo. App. 559. The matter of fact which is meant in this connection is such a character of fact as would, if known, disable the court from rendering the judgment; as if, as before stated, the party was dead or a *feme covert* or a lunatic. It must not be understood that the function of a motion of this nature is to operate like a motion for a new trial. If respondent was dissatisfied with the court's decision in overruling his application for a continuance, his remedy was by appeal or writ of error. Respondent cannot sub-

stitute this proceeding to take the place of a motion for a new trial. The matters of fact set up in this motion, when passed upon by the court in the application for a continuance became a matter of exception which could be reached only by a motion for a new trial and bill of exceptions. Jameson v. Kinsey, 85 Mo. App. 298. (2) The court had no jurisdiction to set aside the judgment. Respondent never filed his motion until after the term of court at which the judgment was rendered had adjourned, and after the lapse of the regular October term, 1906, following. The ruling of the trial court in overruling the application for a continuance, if it was error, was simply an error of law, and could have been corrected only upon appeal or writ of error. It did not constitute "irregularities" on the face of the proceedings subjecting the judgment to attack by motion filed within three years after its rendition. For the court did not violate any "prescribed rule or mode of procedure." Such errors are of judicial discretion and are not correctible after the lapse of the term under the authority given by the statute to set aside judgments for "irregularity." Jameson v. Kinsey, 85 Mo. App. 301; Harbor v. Railroad, 32 Mo. 423. (3) Whether the motion be considered as a motion under the statute, Sec. 795, Revised Statutes 1899, or as a writ of error *coram nobis*, it will not lie to set aside a judgment for the reason alleged in the motion in this case. Hirsh v. Weisberger, 44 Mo. App. 506; Phillips v. Evans, 64 Mo. 17; Rankin v. Lawton, 17 Mo. App. 576; Craig v. Smith, 65 Mo. 536; Dugan v. Scott, 37 Mo. App. 663; Dearborn v. Gann, 126 Mo. App. 642; Harbor v. Railroad, 32 Mo. 423. (4) If there was such an agreement as claimed by respondent, under the written rules of the circuit court of Ste. Genevieve County, in which this case was tried, it was not binding on appellants for the reason that the agreement was not in writing as required by Rule No. 22 of said circuit court. (5) Even if there had been an

agreement between the parties such as is claimed by respondent's attorney, it could not bind the plaintiffs, other than the old lady Jeude, for there is nothing to show that she had any authority from the other plaintiffs to agree to a continuance.

*Ely & Kelso* and *John A. Hope* for respondent.

(1) A motion is no part of the record and it can only be made so by incorporating it into the bill of exceptions; although the motion is set out in the abstract, that does not make it a part of the record. United States v. Gamble, 10 Mo. 459; Christy v. Myers, 21 Mo. 112; In re Webster, 36 Mo. App. 355; McNeill v. Ins. Co., 30 Mo. App. 306; Mackler v. Skellett, 36 Mo. App. 174; Bank v. Fink, 40 Mo. App. 367; Corby v. Tracy, 62 Mo. 515; Force v. Patton, 149 Mo. 446. (2) There can be no question that the circuit court had the power on motion to enter the order appealed from, to-wit: The order entered at the October Term, 1907, vacating the judgment rendered at the April Term, 1906. This is conclusively established by many decisions of the appellate courts of this State, from almost the first volume of the reported decisions down to the latest—the power being exercised (a) by motion under the statute in case of certain irregularities apparent on the fact of the judgment, (b) by the common law writ of error *coram nobis* in case of error arising from some mistake of fact not appearing on the record, or (c), by a proceeding by motion (sometimes described as being in the nature of a writ of error *coram nobis*) wherein the court in the exercise of an inherent power and discretion in furtherance of justice, will set aside a judgment, rendered at a previous term, for fraud, mistake, accident, surprise, excusable neglect, or inadvertence. The following cases illustrate the far-reaching character of this last mentioned remedy and the wide discretion allowed a trial

court in exercising this inherent power: Downing v. Still, 43 Mo. 309; Warren v. Rusk, 16 Mo. 114; Spalding v. Meier, 40 Mo. 176; Fisher v. Fisher, 114 Mo. App. 627; Estes v. Nall, 163 Mo. 387; Bronson v. Schulten, 104 U. S. 410; 15 Ency. Pl. & Pr. 266, 281, 282, 285 and 286. (3) In matters which rest in the sound discretion of a trial court, the rule is that the appellate court rarely interferes. Vacating a judgment, whether at the term at which the judgment was rendered or at a subsequent term, is a matter resting in the discretion of the trial court. Stout v. Lewis, 11 Mo. 438; Scott v. Smith, 133 Mo. 623; Craig v. Smith, 65 Mo. 536. (4) No appeal lies from the order of the trial court vacating its former judgment. The judgment vacated had been rendered without a trial. The motion vacating it, which had the effect of reopening the case, so that there could be a trial of the issues between plaintiff and defendant, was not a motion for a new trial within the meaning of the statute which authorizes an appeal "from any order granting a new trial," nor was the order vacating the judgment such an order as is meant by that statute. The order did not finally dispose of the case. Crossland v. Admire, 118 Mo. 87; Schwoerrer v. Christofel, 64 Mo. App. 81; Breed v. Hobart, 187 Mo. 145; State v. Wallace, 209 Mo. 365; Hirsch v. Weisberger, 44 Mo. App. 506.

WALKER, J.—This cause was certified here by the St. Louis Court of Appeals, because title to real estate was involved. To get at the real issues a short statement of the facts will suffice.

This is an action to quiet title under old section 650, Revised Statutes 1899. Petition was filed September 12, 1905, in the circuit court of Pemiscot county. Defendants appeared and filed answer at the regular November term of that court. At the request and costs of Thomas B. Sims, it was continued over to the February term of said court. At the February

term said Sims took a change of venue to the Ste. Genevieve Circuit Court, and the cause was duly docketed for trial at the April term, 1906, of said last named court. At said April term, said Sims, through his attorney, Judge George H. Williams, applied for and obtained a continuance of the cause until the 23rd day of July, 1906, and was taxed with the costs of such continuance.

On said 23rd day of July, the said Sims again appeared through his attorneys, Whitledge & Pratt, and filed his application for a continuance to the next regular term of the court, which was by the court refused, and thereupon the said Sims, through his said counsel, refused to appear further in the case. The judgment record of the court on July 23, 1906, being a part of the April, 1906, term of the court, thus speaks:

"Now come the plaintiffs by their attorneys, and all the defendants having appeared, and answered plaintiffs' petition in said cause, say nothing further in bar of plaintiffs' action. Thereupon, plaintiffs, by their attorneys, waive a jury and submit this cause to the court upon the pleadings and the evidence and proof adduced in said cause, and the court, having heard and consider ̄d the same doth find that the plaintiffs are the owners in fee of the land described in the petition as follows, to-wit: The northeast quarter of section twenty-eight, in township nineteen, north of range twelve east, lying, being and situate in Pemiscot county, Missouri, and that the plaintiff, Susan Jeude, is the owner and entitled to a dower interest in said land as the widow of Casper Jeude, deceased, and that each of the other plaintiffs owns an undivided one-fifth interest in fee in and to said land, subject, however, to the said dower interest of Susan Jeude, and that the defendants, nor either of them, has any right, title or interest or estate in and to said above described land. It is therefore ordered and adjudged and decreed by the court that the absolute legal and equitable

title to said land is in the plaintiffs, Susan Jeude, Walter G. Jeude, Fredreca M. Jeude, Emma L. Jeude, Herbert L. Jeude and Charles C. Jeude; and that the defendants and those claiming under them are hereby precluded and forever barred from setting up any right, title, interest or estate in or to the above described land. It is further considered, ordered and adjudged by the court that plaintiffs have and recover of and from the defendants, Thomas B. Sims, Laura B. Tistadt, Clara M. Barcroft, Mary F. Liles and Bettie Green, their costs in this suit expended and laid out and that they, the above mentioned plaintiffs, have execution therefor.''

The application for continuance, mentioned supra, becomes a material matter, because of the facts therein recited:

''And now comes the above named Thomas B. Sims, by T. B. Whitledge and Joseph Pratt, his attorneys, and moves the court to continue this cause to the 24th day of July, 1906, for the reason stated in the following affidavit:

''T. B. Whitledge, being duly sworn, says that one George H. Williams of St. Louis is the principal attorney for the defendant in this cause, and that himself and Joseph C. Pratt were employed by the said Mr. Williams at the last term of this court to assist in the trial of the said cause, and that they knew nothin of the merits of the case, and are not prepared and cannot safely go to trial at this term of the court on account of the absence of the said George H. Williams, the attorney of the defendant as above stated. That himself and Mr. Pratt fully expected the said Mr. Williams to be in attendance for the trial at this term of court, and fully expected him to arrive at the 10:30 train from St. Louis, and upon his failure to arrive upon said train he called up by telephone the St. Louis office of Stewart, Elliott & Williams, the law firm of

the said George H. Williams, of St. Louis, and was informed by the person in charge of the office that Mr. Williams was absent from the city, and further stated that a copy of a letter was on the files of their office written by Mr. Williams to Ely & Kelso, a firm of lawyers at Kennett, Missouri, which stated that he, Mr. Williams, had seen Mrs. and Miss Jeude, two of the defendants in the above entitled cause, and made an agreement with them that this case was to be continued by consent to the next regular term of this court; that the said letter was dated on June 18, 1906, and that said Ely & Kelso were in said letter directed to inform Mr. Gossom, the attorney for the plaintiffs in this cause, of the said agreement for continuance; that the letter files also contained a letter from the said Ely & Kelso, dated June 23rd, acknowledging the receipt of said letter, and stating that they would inform Mr. Gossom of the agreement to continue, and that the said George H. Williams, in good faith, and relying on the said agreement with the above named plaintiffs, and for that reason alone, did not come down for the trial of this cause at this time. The affiant further says that he was informed that Mr. Williams could be here in time for the trial of said cause by tomorrow morning if the court would continue it until that time. Affiant further says that neither he himself or Mr. Pratt have any of the title deeds necessary to be introduced in this cause in order to properly defend the said action; that all such title deeds are in the possession of the said Mr. Williams and Thomas B. Sims, the defendant, and affiant further states that he is informed and believes that the said Thomas B. Sims is now sick and unable to be in attendance for trial at this term of court, and that the defendant cannot safely go to trial without the presence and the testimony of the said Thomas B. Sims. That the said George H. Williams and the said defendant, Thomas B. Sims, are not absent by the con-

sent or connivance or procurement of this affiant, and this affiant has good reason to believe and does believe that the said George H. Williams will be on hand and ready for trial of this cause tomorrow morning at 10:30 o'clock a. m., if the said cause is continued to that time, and that great injustice will be done to the defendant in this cause if such continuance is not granted; that the affiant in this case hereby in open court offers and tenders all reasonable expenses to the plaintiff, witnesses, counsel and costs of court that may accrue by reason of the continuance of this cause until tomorrow morning at 10:30 a. m.; and the affiant further states that there are no other causes now pending and ready for trial before this court, that no injustice will be done to any parties by reason of said delay, but that great injustice will be done by the denial of this application, and that this application for a continuance. in this cause is not made for the purpose of vexation or delay, but that substantial justice may be done, and that the defendant has a good and meritorious defense in this cause."

We have omitted the caption and the verification.

After the April term, 1906, the term at which the foregoing judgment was rendered, nothing further was done in the case until the April term, 1907, at which time the following motion was filed in the original cause:

"Now comes defendant, T. B. Sims, and moves the court to set aside the judgment rendered herein against this defendant on the 23rd day of July, 1906, for the reason that said judgment is irregular, prematurely rendered, and wholly unwarranted for the following reasons, to-wit:

"First, because said judgment was obtained by plaintiffs in the absence of defendant. Said defendant being absent at the instance of the plaintiffs and upon an agreement made and entered into by and be-

tween plaintiffs and defendants that said cause would not be taken up for trial but should be continued.

"Second, said defendant would have been present at the trial in person and by counsel had it not been for the undue advantage taken by plaintiffs in securing an agreement to continue the case. Defendant had made every arrangement to be present at the trial of said cause when plaintiffs entered into an agreement that said cause would be continued, and that the parties would not go to Ste. Genevieve to court.

"Third, that in violation of said agreement to continue said cause made with the plaintiffs, and notwithstanding the fact that this defendant did not go to said trial solely because of said agreement, yet these plaintiffs taking advantage of said agreement to continue said cause and the absence of the defendant because of said agreement did attend the said court and asked that judgment be entered against this defendant.

"Fourth, defendant says by reason of said agreement that said judgment is not only irregular, but fraudulently obtained against this defendant.

"Fifth, that if said judgment is permitted to stand, it would deprive this defendant of his property without due process of law.

"Sixth, that the property described in said petition, to-wit: All of the northeast quarter of section twenty-eight, township nineteen north, range twelve east, in Pemiscot county, Missouri, is the absolute property of this defendant. All of which would fully appear from a trial of this cause upon the merits."

We have again, for brevity, omitted caption and verification. Suffice it to say that this motion was filed in the original proceeding, and entitled just as was the petition.

Plaintiffs joined issue by answer, the terms of which are not very material in the view we have taken

of this case. When the motion came on for hearing, the plaintiffs objected in the following language:

"George H. Williams, being duly sworn, testified on the part of the defendant, as follows:

"Examined by Mr. Kelso.

"Judge Gossom: I now desire to object to the introduction of any testimony whatever under this motion, for the reason that the motion shows upon its face that it will not lie in a proceeding of this kind after the term of court at which judgment was rendered had expired, and for the further reason that the motion shows that the facts and questions proposed to be adjudicated in this case cannot be reached by a motion of this kind, and it is not a matter discretionary with this court.

"By the Court: Let the objection be overruled.

"Judge Gossom: We except."

After a hearing upon this motion the court sustained the same and set aside the original judgment of July 23, 1906, and from that judgment so sustaining said motion and setting aside the original judgment, the plaintiffs have appealed. Around these facts center all the contentions here.

I. There are but three possible views in which to consider the document upon which the judgment appealed from in this case is based, i. e.:

Setting Aside Judgment: After Appearance.
(1) that it is a motion under our statutory provisions, (2) that it is a motion in the nature of an application for a writ of error *coram nobis,* and (3) that it arises to the dignity of a bill in equity to set aside a judgment for fraud. Of these in their order:

For some years we have had what is now section 2101, Revised Statutes 1909, on the books. This section reads:

"When such interlocutory judgment shall be made and final judgment entered thereon against any defendant who shall not have been summoned as required by this chapter, or who shall not have appeared to the suit, or has been made a party as the representative of one who shall have been summoned or appeared, such final judgment may be set aside, if the defendant shall, within the time hereinafter limited, appear, and by petition for review, show good cause for setting aside such judgment."

The time limit for a review of the case under this statute is fixed at three years from the rendition of the final judgment. [Sec. 2103, R. S. 1909.]

This section 2101 has no application to the case at bar, because the defendants in the instant case not only appeared to the original petition, but they filed an answer thereto. From the plain wording of this statute, it cannot be said that it applies to the case at bar. The parties do not fall within the class intended to be benefited by this section of our statutory law. When they appeared and filed answer to the petition, they took themselves from under the protecting wings of this legislative act—if they were ever in position to claim its benefits.

Thereafter they were obliged to conduct themselves as the ordinary litigant, even throughout the weary length of the case. They could not throw up their hands at the first adverse ruling, and by deserting the case gain advantage for themselves. The document filed by them at the April term, 1907, of the court, cannot be considered as a motion under the statute quoted, supra.

Sections 2119 and 2120, Revised Statutes 1909, are our Statute of Jeofails, and definitely prescribe upon what irregularities a judgment shall not be set aside. We then have these statutes followed by section 2121, Revised Statutes 1909, which reads:

"Judgments in any court of record shall not be set aside for irregularity, on motion, unless such motion be made within three years after the term at which such judgment was rendered."

Section 2121, Revised Statutes 1909, was section 795, Revised Statutes 1899.

In State ex rel. v. Riley, 219 Mo. l. c. 681, we had occasion to consider the scope and the character of a motion under this section of the statute. We there said: "A motion contemplated by this statute must be one based upon an irregularity which is patent on the record, and not one depending upon proof *dehors* the record. [Phillips v. Evans, 64 Mo. l. c. 22; Latshaw v. McNees, 50 Mo. l. c. 384; Powell v. Gott, 13 Mo. l. c. 461.]"

In the Phillips case, supra, this court said: "Although a judgment may for irregularity be set aside at any time within three years (Wagn. Stat., 1062, § 26), yet such irregularity must be one patent of record and cannot be shown by matter *dehors* the record."

The other cases cited are to a like effect. The instrument filed in this case is not one covered by this statute. The errors or wrongs complained of therein were not patent of record, but were dependent upon proof *dehors* the record.

In all cases, except those provided for by these statutes, a court has no authority to disturb its judgment after the lapse of the term. This has been so universally ruled, that citations would be to become superfluous.

The defendants, therefore, are in no position to lay hold of either of these two statutes, and the original judgment was wrongfully set aside after the lapse of the term, unless such action can be upheld upon one of the other two theories remaining to be discussed.

II. Is the document filed by the defendants a motion in the nature of an application to the court for the common law writ of error *coram nobis?* Does it go to questions for which such a motion is permitted under the practice in this State? When the instrument upon which the judgment vacating the original judgment is examined, both these questions must be answered in the negative. At common law writs of error *coram nobis* were writs granted by the court rendering the judgment for the purpose of correcting some error of fact. [2 Tidd's Practice, p. 1136.] The fact must be such a fact, that had it been known at the time of the rendition of the judgment, such judgment would not have been entered. It must be a fact directly connected with the case in which the judgment was entered, and a fact wrongly considered in the entry of the judgment which is sought to be corrected by the writ of error *coram nobis.* To illustrate, the court enters a judgment against a dead person after service, on the theory that he is still alive, or against a minor thinking such minor was an adult. In other words, the erroneous fact must be one which entered into the very makeup of the judgment sought to be overruled and set aside by the writ, and the real fact sought to be established upon the hearing of the writ must be one which would have prevented the entry of the judgment had it been known to the court. [State v. Stanley, 225 Mo. 1. c. ·534; State ex rel. v. Riley, supra.] In the Stanley case, supra, this court said: ''But again, this writ is only allowed to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which without any fault or negligence of the party was not presented to the court.'' The motion in this case simply sets up that the plaintiffs fraudulently misled counsel for the defendants as to the time of the trial of the cause. Whilst such conduct, if shown upon a trial by

**Motion as Application for Writ of Error Coram Nobis.**

bill in equity to set aside the judgment for fraud, would perhaps be good, yet we fail to find any case wherein such fact is a ground for the common law writ of error *coram nobis*. In our practice a motion is considered as an application for such a writ. The writ being heard in the same court which issues it, is usually never issued at all, but the matter is determined upon a hearing of the matters raised in the application (in this State in the motion) as if a formal writ had been issued. [5 Ency. Pl. & Pr. 36.]

The trial of the issue of fraud used in preventing the party from being present and making a defense, is the trial of an issue outside of any issue involved in the case in which the judgment is rendered. It is not an issue in that case, and in my mind not an issue out of which an error of fact can arise, which would authorize a writ of error *coram nobis*. The error of fact to be corrected by the writ of error *coram nobis* must be errors of fact pertinent to the issues in the case, and not mere extraneous matters.

We are, therefore, of the opinion that this motion can not be considered as a motion in the nature of a writ of error *coram nobis*.

III. But even if we grant the proposition that the fraudulent misleading of a party as to the time of the

Setting Aside Judgment Obtained by Fraud: Motion in Nature of Writ of Error Coram Nobis.

trial is a pertinent issue entering into and culminating in the judgment sought to be set aside, and that this motion should be considered as an application for a writ of error *coram nobis,* yet the judgment on such application is erroneous under the facts in the case. In the record before us we have the affidavit for continuance. This affidavit sets out the facts of an agreement to continue. It sets out the very things charged in this motion or application. It is, therefore, apparent from the face of the record before us that the fact of this alleged agreement

was not only known to counsel for defendants, but that it was brought to the attention of the court before the rendition of the judgment in the case—the judgment attacked by the motion and vacated by the court *nisi.*.

It is the universal rule that if a fact be known prior to the entry of judgment, or by reasonable diligence it might have been known prior to the entry of the judgment, such fact can not be relied upon under the common law writ of error *coram nobis,* to set aside such judgment. The cases upon this point will be found collated in Reed v. Bright, 232 Mo. l. c. 410 et seq., and in State v. Stanley, 225 Mo. l. c. 532 et seq. The general rule is stated in 5 Ency. Pl. & Pr. 29, in this language: "The writ will not lie where the party complaining knew the fact complained of, at the time of or before trial, or by the exercise of reasonable diligence might have known it; or is otherwise guilty of personal negligence in the matter; or when proper advantage could have been taken of the alleged error at the trial."

The fact complained of in the case at bar was not only a fact known to counsel for defendants prior to entry of judgment, or the trial of the case, but one actually called to the attention of the trial court by them in the motion for continuance. It was, therefore, a matter within the knowledge of the parties (for the knowledge of one's attorneys is his knowledge) and within the knowledge of the court which entered the judgment. So that even if we consider the motion as and for the writ of error *coram nobis,* the judgment appealed from in the case before us is wrong upon the showing made.

IV. Counsel for respondents do not seriously contend in their brief that this proceeding is one in equity to set aside a judgment for fraud in the procurement thereof. Stated differently, they do not contend that the instrument here un-

Motion
as Bill
in Equity.

der consideration is a bill in equity to set aside a judgment for fraud. It is clear that it is not such instrument. To have invoked equity would have meant the bringing of an independent action, and this does not purport to be an independent equitable action. As it is not a bill in equity upon its very face, it is useless to discuss the question whether or not it states facts sufficient to constitute a good bill in equity.

V. But counsel for respondents urge that the plaintiffs filed an answer to the instrument filed by defendants, and that for this reason they should be precluded from questioning its sufficiency now. Plaintiffs treated this instrument as a motion, and they challenged the sufficiency thereof by objection to the introduction of any evidence under the same. This objection we have set out in the statement of facts, and it is such as to protect all rights of the plaintiffs. Defendants proceeded *nisi* as if it were a motion in the nature of a writ of error *coram nobis*, and by that token they must be judged here.

Theory at Trial.

VI. Lastly, it is contended that this motion to set aside the judgment is not preserved in the bill of exceptions, and for that reason the judgment thereon is not for review here. This contention will not avail the defendants. First, if this document is neither a bill in equity nor an application for a writ of error *coràm nobis,* but is a simple motion to set aside a judgment, it matters not whether it is here at all. The record proper is here. This record shows a judgment in due form at the April term, 1906, and then it shows that the court set aside that judgment at a subsequent term, i. e., at the April term, 1907, upon a motion filed at such subsequent term. The judgment under review here denominates it a motion. Note the language of that judgment: "Now on this day come the parties in the above entitled cause by their respective attorneys herein, and the motion to set aside judgment in

the above entitled cause was by the court taken up and after duly considering the same and hearing testimony regarding same, and argument of counsel, the court sustains the same. It is therefore ordered and adjudged by the court that said judgment heretofore rendered in the above entitled cause be set aside and vacated. It is further ordered and adjudged that defendants have and recover of plaintiffs his costs on this behalf expended and have execution therefor.''

So, taking the record proper we have a valid judgment entered at the April term, 1906, and such judgment set aside at a subsequent term of the court, a time when the court had lost all jurisdiction over the judgment.

And, secondly, if we consider the instrument filed, as a motion in the nature of an application for a writ of error *coram nobis,* then such document is in the nature of a pleading (5 Ency. Pl. & Pr. 33) or petition, and is a part of the record proper, and does not have to be preserved by bill of exceptions. All the books and the cases treat a motion of this kind as a petition, and as the foundation for the relief sought, and being of that character it should be treated as record proper.

From what has been said it follows that the judgment vacating the former judgment should be reversed, to the end that the original judgment may stand in full force and effect. It may be that defendants have a remedy, a matter we do not decide, but this judgment is wrong and should be reversed. It is so ordered.

All concur except *Lamm, C. J.,* who dissents in an opinion filed, and *Faris, J.,* who does not sit.


### DISSENTING OPINION.

LAMM, C. J.—Plaintiff sued Sims and others in the Pemiscot Circuit Court to determine title to certain land under former section 650 (now R. S. 1909, sec. 2535, as amended). Sims answered separately,

claiming the land.  Other defendants answered jointly, claiming the land *as against the world,* and after that valiant challenge they straightway and, once for all, disappear from subsequent proceedings.   Presently Sims (whom we will call defendant) took a change of venue to Ste. Genevieve.  After a continuance by him it was once more continued by him to July 23, 1906, which we conclude is a day certain at an adjourned term, specially set, we take it, for the trial.   When reached for trial on that day, Sims through counsel filed an application asking for a continuance until the next day.  That application was overruled.  Thereupon Sims' local attorneys stood mute, taking no further part.  Defendant was not present in person.  Thereat the cause was heard on one side and judgment entered for plaintiffs, finding and decreeing they were the owners of the land as against all the defendants—one of plaintiffs, Susan Jeude, being adjudged a dowress, the rest owners of the fee, and the several defendants were forever barred from claiming any right, title, etc.   The judgment has, *inter alia,* the following narration: "Now come the plaintiffs by their attorneys, and all the defendants having appeared and answered plaintiffs' petition in said cause, say nothing further in bar of plaintiffs' action."  Presently, on the same day the court adjourned to court in course, with nothing further done at that term.  So, at the October term, 1906. But to the April term, 1907, defendant filed a motion to vacate the judgment. We assume plaintiffs were served with a notice and copy of the motion.  At any rate, they personally appeared to the April term, 1907, and filed a pleading called "an answer" to the motion. Thereupon on full appearances and full hearing the issues on the motion were tried.  Taking time to consider, the court at a subsequent term entered a judgment and order vacating the judgment of July 23, 1906. In due time plaintiffs made an attempt to have the vacating judgment and order set aside by a motion for

new trial. Failing in that, they saved an exception and on apt steps came up by appeal. The appeal was lodged in the St. Louis Court of Appeals and transferred here because title to real estate is involved.

There is a main question, *viz*: On the facts, had the court jurisdiction to enter its vacating judgment and order on a motion filed to a subsequent term? When that question is reached we will set forth sufficient of the record to intelligently dispose of it. There are some subsidiary points to be ruled to clear the way for the main controversy. Of them severally.

I. It is argued for respondent there is no call in the bill of exceptions for the motion to vacate, nor is

Motion: Preserved in Record Proper.

it preserved in such bill, hence it is not regularly here on appeal. This agreeable to the precept: That which does not appear where it should appear is the same as if it did not exist. Let us look to that.

The motion is in the record, but is in the abstract of the record proper, not in the abstract of the bill, and no call is made for it therein.

The point is without substance. Because:

Whilst the general rule is that a bill of exceptions is the proper receptacle for ordinary motions (Shohoney v. Railroad, 231 Mo. l. c. 152, *post* and *ante*) there are exceptions to the rule as well established as the rule itself. One of them is that a demurrer, stood on, or a motion filling the office of one, preserves itself without an exception and without a bill. [Shohoney case, supra.] Another exception is that motions, which, when served, have the office of due process of law or are in the nature of original and independent proceedings, though grafted on the main stem of the original suit, are in effect pleadings, become part of the record proper and come up without a bill. [Wilson v. Railroad, 108 Mo. l. c. 602 et seq., and cases cited; Ryan v. Growney, 125 Mo. l. c. 480; City of Tarkio v. Clark, 186 Mo. l. c. 293.]

Here the motion to vacate authorized a judgment setting aside the former judgment and the recovery of costs. The vacating judgment entered was to that effect. The proceeding, then, being to all intents and purposes an independent proceeding in which the motion was the petition, it falls within the noted exception to the general rule.

Accordingly, the point should be disallowed to respondent.

Appeal:
From
Order
Vacating
Judgment

II. It is next argued by respondent that no appeal lies from the vacating judgment, or order. We think that an unsound position also, because:

An appeal is a creature of statute only. Now, by Revised Statutes 1909, section 2038, an appeal is allowed "from any final judgment in the case or from any special order after final judgment in the cause."

As said heretofore, in a sense, this is a new suit. From that standpoint, broadly speaking, the vacating judgment was a "final judgment" and an appeal lies by virtue of the statute. But if the proceeding to vacate be held not a new suit, yet the statute still allows an appeal, because, on such view, the vacating judgment or order may be allowed (without violence to reason or language) to fall into the class of "any special order after final judgment in the cause." So that, for our present purposes, we may reserve the question whether the vacating judgment or order, on one hand, is a "final judgment" or, on the other, is a "special order after final judgment," since it is one or the other and an appeal lies either way. And so we have held. [State ex rel. v. Riley, 219 Mo. l. c. 695 et seq.] So, in Shuck v. Lawton, 249 Mo. 168, error was brought on such a vacating judgment and we took cognizance of the case. Doubtless other cases could be found by time and diligence in which we have entertained jurisdiction of appeals from orders refusing to vacate. Craig v. Smith, 65 Mo. 536, is one of that kind. Bur-

gess v. Hitt, 21 Mo. App. 313, evidences an instance of an appeal from a vacating judgment.

The practice being against respondent's contention, the point should be ruled against him, the maxims being: Common observance is not to be departed from; Custom is second law; Custom is the best expounder of the law. [Donnell v. Wright, 199 Mo. 1. c. 316.]

III. Appellants seek to impugn the vacating judgment, among other ways, by a rule of court. Let us look to that. The attack on the judgment in the motion is based on an alleged violation of an agreement to continue whereby it is said defendant was

**Rules of Court: Oral Agreement to Continue.** tricked out of his defense. Now, that agreement was not in writing. Judge George Williams who made the agreement on behalf of Sims lived in St. Louis, as did the two plaintiffs who are said to have entered into the agreement. Sims's other attorneys had no part therein, nor did plaintiffs' attorneys. Sims had arranged with Ely and Kelso of Kennett to assist Judge Williams at the trial, as will more fully appear hereafter. There was also an arrangement with Pratt and Whitledge who lived at the place of the trial, to assist as local counsel. Judge Williams was Sims's principal attorney and had general charge of his business. He was recognized as the leader on defendants' side. There was a rule of the Ste. Genevieve Circuit Court, number 22, reading:

"No agreement, understanding or stipulation of parties or their attorneys concerning any pending cause, or any matter of proceeding therein, will be recognized or enforced by the court unless made in writing and filed in said cause, or made in open court."

It is not shown that Sims or Ely and Kelso or Judge Williams (all non-residents of Ste. Genevieve) knew of the existence of this rule. Presumably they did not. At the hearing of the application the existence of an agreement to continue was disputed. The

record indicates that the rule was, at least, one ground upon which the court overruled the application, coupled with the conceded fact that the alleged agreement did not conform to it but rested alone in parol. In this view of the matter, it is argued for appellants that the above court rule not only impugns the vacating judgment but made the original impregnable against attack.

But we are not willing to follow the lead of that suggestion. General rules of court, like general principles of law, are subject to exceptions when justice cries out for the exception. Court rules are mere ends to the attainment of justice, and are not to be twisted into instruments of injustice. Courts, about the exalted office of dispensing justice, are not to have their functions starved and atrophied by a mere phrase or rule, in an exceptional case calling for a suspension of the rule as a debt due to justice. Says Chief Justice. TANEY (United States v. Breitling, 61 U. S. l. c. 254): "And it is always within the power of the court to suspend its own rules, or except a particular case from its operation, whenever the purposes of justice require it." Speaking to a rule of court (*quatuor pedibus currit* with the one at bar) interposed in McIntosh v. Crawford County, 13 Kan. l. c. 176, the court said through BREWER, J.: "Even with such a rule it would not follow that a court was bound to tolerate so gross a breach of faith. [To-wit, a violation of a verbal agreement to continue which tricked the other party into absence and out of his defense.] The rules are designed to prevent injustice, not to further and accomplish it. The question is not, whether the court would have erred after notice of such a parol agreement in compelling the plaintiff to go to trial, but whether a party after making such an agreement can be allowed in a court of justice to profit by breaking

258 Mo.—4

it.'' [Pickett v. Wallace, 54 Cal. 147, is in point, and Fritz v. Railroad, 243 Mo. l. c. 68, *arguendo*.]

On such reasons we conclude that if the court gave full credence to the evidence on behalf of defendant (of which more presently), the rule, without more, interposed no impassable obstacle to relief. Appellants' case can not alone stand, therefore, on that narrow point. It was not reversible error to except the case from the court rule, as was done.

The point should be ruled against appellants.

IV. With the foregoing questions at rest, the main controversy confronts us. It (assuming facts already stated) searches other record facts, which follow:

It substantially appears that two of plaintiffs who seem to have acted for all (and there is no evidence tending to show their acts were repudiated by the others as unauthorized) appeared at the office of Judge Williams in St. Louis some days prior to the day of trial. They had not been able to hear from their own attorney. A negotiation for a compromise seems to have been pending and, to that end, the plan of Mr. Sims was to presently send his son to Pemiscot to thoroughly investigate the value of the land, which he proposed to do. (*Note*: We do not mean to say that the facts we relate were not disputed in part. It is sufficient to state that on behalf of Sims the court heard testimony on the motion to vacate tending to prove them.) The two plaintiffs proposed a continuance pending the compromise negotiation. Judge Williams agreed to it. He offered to notify plaintiffs' attorneys of the agreement, but they took it upon themselves to do so, preferring that course. Mr. Sims at that time was in poor health, on that account was planning a trip north, and had postponed it to attend the trial. The evidence tends to show he had a meritorious defense; that he had paid the taxes on the land

*Margin note:* Judgment: Obtained by Fraud: Setting Aside on Motion.

for a score of years and claimed and had evidence of title.

Judge Williams had, as said, charge of Mr. Sims's business in Southeast Missouri and we infer was about to go on the bench. Be that one way or the other, an arrangement had been made with Ely and Kelso to take charge of Sims's business in that region and relieve Judge Williams. The latter, however, was to remain chief counsel in the instant case and try it with the assistance of the former. To that end he alone had made and had charge of the trial preparations. As said, a firm of local attorneys was also employed, but they had received no instructions, knew nothing of the merits and were to assist in the actual trial, when it came on, under the supervision and direction of their associates. At once on the agreement to continue, Mr. Sims was notified by Judge Williams that the case would not be tried and, on the strength of that information, he left for the north. He knew nothing of the trial or of the judgment until, say, six weeks afterwards. Judge Williams promptly notified Ely and Kelso that the case would not be tried and that they need not appear. He also out of caution asked them to notify the attorneys on the other side. Through some inadvertence this was not done, neither did plaintiffs notify their attorneys as Judge Williams testified they were to do. Relying on the agreement, Judge Williams left the city of St. Louis with his family for California, Missouri. He left in his St. Louis office all title papers and documents pertinent to the defense. On the day set plaintiffs and their attorneys appeared in court and demanded a trial. Thereupon the local attorneys for Sims, up to that time apparently in utter ignorance of the facts, got into hasty telephone communication with Judge Williams's office at St. Louis and that office got into communication with Judge Williams at California. By these means information was conveyed to Sim's local attorneys of the agreement and

the reason of the absence of Williams, Sims and Ely and Kelso. The upshot was that it was ascertained that Judge Williams could reach the place of trial on the next day and bring with him Sims's documentary evidence, if the trial was to come off. Accordingly an application for a continuance was drawn *instanter* by the local attorneys asking for a continuance until the next day only. Through the haste and lack of information it did not disclose that Sims had gone north and could not set forth all the facts, but it did the best possible, and disclosed to the court that the local attorneys had none of the title deeds essential to the defense and were in a state of unpreparedness. The application was in technical form and was verified by affidavit. It was overruled and, as said, the local attorneys took no further part. It should be said that while agreeing that they visited Judge Williams's office and that a continuance was talked of, as well as a compromise, plaintiffs denied making any agreement to continue. It will not be necessary to cumber the record with their testimony or of the corroborating testimony on either side, for if the court gave credence to the evidence for Sims on the hearing on the motion to vacate, as it had the right to do, then, the facts appealed strongly to the sound discretion of the court, provided it had any to exercise. The foregoing sufficiently outlines the substance of the controversy.

At the trial of the motion, plaintiffs insisted the court had no jurisdiction to grant relief, and jurisdiction is the master question here for determination. In determining that question of law we should leave it to the trial court to weigh the testimony, and we should not find fault with it for accepting defendant's theory of the facts.

(a) As an aid in determining that question some preliminary observations are useful:

(1) In the first place, the facts on defendant's side bring the cause within an ancient head of equity

jurisdiction, to-wit, relief against a judgment obtained by fraud, in extrinsic and collateral matter, by which defendant was tricked out of making his meritorious defense. Bresnehan v. Price, 57 Mo. 422, and Lee v. Harmon, 84 Mo. App. 157, are typical examples of cases illustrating the jurisdiction of a court of equity to grant relief where facts exist like those at bar.

(2)   In the next place, as will appear presently, the foregoing does not state the whole source or manner of the remedy; for a practice prevails in many courts permitting a cumulative remedy, to-wit, summary relief by way of motion. The sources of this power, whether statutory, common law, or custom with the rules defining it and its limits, are somewhat obscure. The rules are ill defined and he would be a bold judge who would now undertake the task of setting metes and bounds to it—one declined by so wise and learned a jurist as Mr. Justice MILLER. [Bronson v. Schulten,104 U. S. 1. c. 416 et seq.] But that the practice exists and may be called into play to prevent a miscarriage of justice and grant quick relief by motion in the same cause, *in exceptional cases*, can not be gainsaid. Speaking to the point, Mr. Justice MILLER says in the Bronson-Schulten case, supra (pp. 416-7):

*Judgment: Obtained by Fraud: Relief by Motion: Custom.*

"There has grown up, however, in the courts of law a tendency to apply to this control over their own judgments some of the principles of the courts of equity in cases which go a little further in administering summary relief than the old-fashioned writ of error *coram vobis* did. This practice has been founded in the courts of many of the States on statutes which conferred a prescribed and limited control over the judgment of a court after the expiration of the term at which it was rendered. In some cases the summary remedy by motion has been granted as founded in the

inherent power of the court over its own judgments, and to avoid the expense and delay of a formal suit in chancery. It can easily be seen how this practice is justified in courts of the States where a system has been adopted which amalgamates the equitable and common-law jurisdiction in one form of action, as most of the rules of procedure do.''

(*Note*:. I stress the last sentence in the above excerpt as pregnant and apposite. . Missouri is in the class of States justifying the practice and doubtless it harks back to the reason indicated. It is of great significance, also, to mark the fact that no word of condemnation of the practice can be found in any case in our appellate courts, though many opportunities have arisen for criticism if such was called for because of any inherent vice in relief by motion after the term in exceptional cases crying out for it.)

A standard treatise (1 Black on Judgments [2 Ed.], sec. 303) sums up the matter in this way:

''The method of procuring the vacation of judgments which is by far the most commonly used, at the present day, is the proceeding by application to the court which rendered the judgment, in the form of a motion, with notice to the adverse party. This practice, being simple, speedy, and effective, is well calculated to promote the interests of justice with the least cost and trouble to suitors.''

Indeed it is not clear what inherent vice exists or what harm to jurisprudence can arise in summary relief by motion. When the parties are served with notice and appear (as here) there can be no question about *due process of law,* or ''a day in court.'' So, when the judgment is vacated in that way the original cause stands for trial on its merits and cases might be put where the plaintiff, in that regard, would be left in a more advantageous position than he would occupy in a case where (as defendant) by a bill in equity and

the decree of a chancellor the merits might be involved
and be adjudicated against him in abrogating his judg-
ment.

In the above regard the relief by motion is akin
to that granted by a motion for a new trial—*i. e.*,
it touches the discretion of the very court whose confi-
dence or process has been abused. "Such relief," says
SCOTT, J., in Stout v. Lewis, 11 Mo. l. c. 439, "operates
merely as a delay at most and that delay may as well
be borne in the court below as in coming to this court
for redress."

A familiar instance of relief by motion arises un-
der the Attorney's Lien Act. By that act a right was
given, but no remedy. But a practice grew up, find-
ing countenance in the common law, for relief not only
by suit, but by motion and an adjudication on such
motion of an attorney's rights thereunder after satis-
faction of a judgment. [Young v. Renshaw, 102 Mo.
App. 173; Curtis v. Railroad, 118 Mo. App. 341; Wait
v. Railroad, 204 Mo. 491.]

(3) In the next place, it must not be lost sight
of that a judgment imports absolute verity and is the
highest form of obligation. It is protected by the
maxim: It is to the interest of the State that litiga-
tion come to an end. During a term the court holds its
judgments in its breast, but after term, as a general
rule, they may not be set aside except for some fraud
or trickery scandalizing the administration of justice
and arising (not out of the negligence of a party nor
out of perjury at the trial, but), as said heretofore, ex-
trinsically and collaterally whereby the court itself has
become an instrument of injustice. [Howard v. Scott,
225 Mo. l. c. 711 et seq.] Relief by motion, if such
right exists in this State, must be strictly confined with-
in the general bounds of that settled doctrine, except
where a certain form of relief in a certain class of
cases is expressly granted by statute by a "petition
for review," infra.

(4) In the next place, there is a statutory scheme for vacating final judgments by a "petition for review." [R. S. 1909, secs. 2101 to 2108 inclusive.] But there being service by summons in the instant case it does not fall within the purview of those sections.

(5) In the next place, there is a statute under which relief has been granted in many cases (Revised Statutes 1909, sec. 2121) reading:

"Judgments in any court of record shall not be set aside for irregularity, on motion, unless such motion be made within three years after the term at which such judgment was rendered."

It would appear that such section, in words, does not *grant* a power but puts a *limitation* on a power assumed to exist. However, the rule has been to allow it as a source of judicial power and it has been uniformly applied in that way. It will be observed it uses the word "irregularity." Accordingly, on that word as a hinge all the cases brought under the section turn. What is an "irregularity" in a legal sense? Tidd defines it (1 Tidd, Pr. [3 Am. Ed.], p. 512) thus: "An *irregularity* may be defined to be, the want of adherence to some prescribed rule or mode of proceeding; and it consists, either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time, or improper manner." BLISS, J., shortens the definition by accepting that part of Tidd's before the semicolon. [Downing v. Still, 43 Mo. l. c. 317.] We have ruled over and over again that the irregularity reached by motion under that section must be one patent on the record and not resting in proof *dehors* the record. [Shuck v. Lawton, 249 Mo. 168; State ex rel. v. Riley, 219 Mo. l. c. 681, and cases cited.] The irregularity in the mind of the lawmaker is distinguished by the courts from mere "error." [Ex parte Toney, 11 Mo. 661; State ex rel. v. Tate, 109 Mo. l. c. 270-1.]

To illustrate: Rendering a judgment on service by publication based on an allegation of non-residence in the petition when none such exists would be an irregularity patent of record. [Shuck v. Lawton, supra.] We construe Chambers v. Carthel, 35 Mo. 374, to rule that if a judgment be taken exceeding the amount prayed in the petition that would be an irregularity under the statute. Taking judgment after an order of reference would be an irregularity. [Stacker v. Circuit Court, 25 Mo. 401.] A judgment which the record shows was taken prematurely is such irregularity. [Branstetter v. Rives, 34 Mo. 318.] A judgment on a revivor of an action without the entry of appearance or service of a *scire facias* is such irregularity. [Harkness v. Austin, 36 Mo. 47.]

Such examples might be added to indefinitely to illustrate the application of the statute, but the foregoing suffice. Evidently there was no irregularity of that class in the case at bar and respondent's case can not prosper on that statute.

(b) This brings us to a motion called a motion in the nature of a writ of error *coram nobis;* sometimes called, when issued by a reviewing court to a trial court, a writ of error *coram vobis.* [Bl. L. Dict. tit. *"coram."*]

It will be observed that a writ of error *coram nobis* as well as a writ of error *coram vobis* at common law were actual writs and, speaking with reference to a growth in the law, it is apparent that the very existence of a motion in the *nature* of such writs, whereby a simple and speedy remedy is attained, imports a growth in the law; for I do not find that a motion in the nature of the writ of error *coram nobis* or *coram vobis* was known at the old common law. And why should not the law grow? Did not the common law *grow?* Did not

Judgment Obtained by Fraud: Setting Aside on Motion in Nature of Writ Coram Nobis.

equity *grow?* Courts are not lawmakers but the large
fact remains that the body of the law relating to rules
of procedure, rules of interpretation, rules of construc-
tion, rules of evidence and many other working theo-
ries of the law are the exclusive work of courts. Are
they the worse off for that? The very common law
itself is a mere "system of unwritten law, not evi-
denced by statutes, but by tradition and the opinions
and judgments of the sages of the law." [*Per* Scott,
J., in Riddick v. Walsh, 15 Mo. 1. c. 536.] There is
nothing, then, revolutionary or singular, let alone rep-
rehensible, in the proposition that courts have worked
out, as a sensible instrumentality in administering jus-
tice, a motion in the nature of a writ of error *coram
nobis,* entirely without aid of the lawmaker, or that
they have recourse to the common law for the bases
or prototypes for modern motions. In broad con-
struction, the object of that motion is, after the term,
to bring before the court some fact *dehors* the record
which if the court had known it would not have ren-
dered the judgment. Usually such fact is coverture, or
insanity, or infancy absent a guardian *ad litem,* or the
appearance of an attorney without authority, or the
rendition of a judgment after death of a party without
a revivor, or the sentencing of a defendant under age
to the penitentiary, or the sentencing of a slave to
the penitentiary for larceny. Examples of the various
offices filled by this motion have been collected in Cross
v. Gould, 131 Mo. App. 585 [*Q. v.*] And though we were
of a different opinion on argument yet our conclusion
has come to be on full consideration that the motion,
timely filed, is flexible enough to adjust itself to the
equitable feature of setting aside a judgment after the
term, where the rights of third parties have not in-
tervened, obtained by means of a violation of an agree-
ment to continue, tricking the defendant into absence
and out of his defense, unless the remedy is lost by

neglect or laches. We think that conclusion is within reasoned precedents. Thus:

In Siewerd v. Farnen, 71 Md. 1. c. 630, the right to strike out a judgment obtained by "fraud, surprise or irregularity," on motion after the term, was taken for granted; witness the phrase, "It can hardly be necessary to say that courts, in the exercise of a *quasi* equitable jurisdiction, will," etc.

In McIntosh v. Crawford County, 13 Kan. 171, under precisely the facts in judgment here, the remedy was allowed on motion after the judgment term.

But our own cases serve in giving countenance to that view. Thus:

In Spalding v. Meier, 40 Mo. 176, relief was granted after the term, on motion, by setting aside a judgment entered after an agreement to continue, which continuance, by inadvertence, had not been entered by the clerk.

In Downing v. Still, 43 Mo. 309, a careful judge whose juristic fame has, of right, grown gently but steadily, BLISS, J., speaking for this court on a motion of the character in judgment, said (p. 319):

"The question of fraud is also raised by the motion. The charge is made that all the proceedings after the suggestion of the death of Thatcher—to-wit: the appearance of Still, the entry of judgment, the issuing of the execution, the sale and the return—were without the knowledge of the plaintiff or his attorney, and were a conspiracy to defraud him of his security. The charge is sustained by affidavits, except as to the conspiracy. The proceedings complained of were without the knowledge of those interested in seeing that they were regular. This matter should have been considered below. The objection that it can only be inquired into upon petition in the nature of a bill in equity is not well taken. Though fraud and mistake are often grounds for relief, yet the proper proceeding in a matter of this kind is by motion."

The foregoing pronouncement was put, and soundly put, on the great authority of Chancellor KENT (Delancey v. Brownell, 4 Johns. 136, and Denton v. Noyes, 6 Johns. 295.) and other cases cited by Judge BLISS.

In Estes v. Nell, 163 Mo. 387, GANTT, J., uses the doctrine of the Tennessee courts in deciding his case, stating it in this way: "The motion or petition, it has been ruled, must show that the movent or petitioner was prevented from making the defense, by surprise, accident, mistake or fraud of the adversary without fault on his part."

In Tennessee the use of the writ of error *coram nobis* to get relief in the emergency we are dealing with is a favorite practice. [Tucker v. James, 12 Heisk. 333; Dunnivant & Co. v. Miller, 1 Baxter, 227; Crawford v. Williams, 1 Swan. 341; Crouch v. Mullinix, 1 Heisk. 478.]

Returning to our own State: in State ex rel. v. Riley, 219 Mo. 1. c. 682 et seq., the following excerpt from 5 Ency. Pl. & Pr. 26-27 was quoted approvingly as descriptive of the scope and office of the writ of error *coram nobis*:

"The office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian, or coverture, where the common law disability still exists, or insanity, it seems, at the time of the trial; or a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned."

In Fisher v. Fisher, 114 Mo. App. 627, a soundly reasoned case, it was unanimously ruled by the learned judges of the Kansas City Court of Appeals that a motion in the nature of a writ of error *coram nobis,* filed after the term, could reach a fraud of the very character involved in the case at bar.

Finally, the St. Louis Court of Appeals in Cross v. Gould, 131 Mo. App. 585, followed the doctrine of the Kansas City Court of Appeals in pronouncing judgment on the same character of a motion, based on the same ground involved here and filed after judgment term. The latter case has received the *vise* of this court as an acceptable exposition of the law. [Shuck v. Lawton, 249 Mo. 168.]

True it has been ruled that the writ (and, hence, the motion in the nature of the writ) can not be used merely to review and revise the opinions of the court, nor correct mere errors of law. [State v. Stanley, 225 Mo. l. c. 533.] Nor can the motion be based on facts which are inconsistent with, or contradictory of, the record. [Reed v. Bright, 232 Mo. 399.]

So, all the authorities hold that there must be a showing of diligence. We are of opinion there was such showing made below, and that the case falls within the guarded doctrine of the Reed-Bright and Stanley cases, and the array of others heretofore cited.

Each case of this sort must necessarily be decided on its own facts. Here the trial court faced the fact that he had been misled in the hurry of an instant into deciding a case on a hearing of only one side, when the other side had a defense they could not make and were not present to make because of their trust in a broken agreement to continue. This situation brought the court within Seneca's criticism: *Qui statuit aliquid, parte inaudita altera aequum licet statuerit, haud regnus fuerit*—which a scholar tells me means in English: "He who decides a case without hearing the other side, though he decides justly, cannot be consid-

ered just." We are of opinion that the court set both itself and justice right by opening the judgment.

This opinion was written as a principal opinion, but it was seed that fell by the wayside or on stony ground, and—but no matter. Still entertaining the same views after reargument In Banc, I file the same opinion as a dissent. Maybe the "stone which the builders rejected" etc. *Quien sabe?*