IN RE KINGS LAKE DRAINAGE DISTRICT, A CORPORATION, APPELLANT, v. CHRISTOPHER WINKELMEYER, RESPONDENT.—62 S. W. (2d) 1101.

St. Louis Court of Appeals. Opinion filed Sept. 12, 1933.

*Omer H. Avery* for appellant.

1104

*Williams & Huston* and *Rassieur, Long & Yawitz* for respondent.

SUTTON, C.—This is a proceeding by motion in the nature of a writ of error *coram nobis*, filed by Christopher Winkelmeyer, in the Circuit Court of Lincoln County, on March 15, 1932, to modify the judgment of the circuit court assessing benefits against his lands situate in the Kings Lake Drainage District. The judgment assessing the benefits was entered on September 30, 1920.

Kings Lake Drainage District was organized under the provisions of Article 1, Chapter 28, Revised Statutes 1919.

The present motion in the nature of a writ of error *coram nobis* alleges that on September 30, 1920, said Circuit Court of Lincoln County entered its judgment against lot 3 of United States survey 1679, in Lincoln County, Missouri, in the sum of $9,405, for benefits for the making of the improvements contemplated by said drainage district, and by its said judgment assessed benefits against lot 1 of United States survey 1678, in Lincoln County, Missouri, for the making of said improvements, in the sum of $1,104; that in determining the benefits enjoyed by lot 3 of United States survey 1679 the court found and determined that said lot contained 165 acres, and assessed benefits against said lot at the rate of $57 per acre, or $9,405; that the court was misled in determining the benefits in that instead of containing 165 acres said lot contained only 82.51 acres, so that instead of assessing benefits against said lot in the sum of $9,405, had the court been advised of the true facts as to the number of acres contained in said lot it would have assessed the benefits at $4,702.50; that in determining the benefits enjoyed by

lot 1 of United States survey 1678 the court found and determined that said lot contained twenty-three acres, and assessed benefits against said lot at the rate of $48 per acre, or $1,104; that the court was misled in determining the benefits in that instead of containing twenty-three acres said lot contained only 20.08 acres, so that instead of assessing benefits against said lot in the sum of $1,104, had the court been advised of the true facts as to the number of acres contained in said lot it would have assessed the benefits at $963.84.

The commissioners appointed to assess damages and benefits, in their report duly filed, assessed benefits against lot 3 in survey 1679 at $9,405, stating that the lot contained 165 acres, and assessed benefits against lot 1 in survey 1678 at $1,104, stating that the lot contained twenty-three acres. Upon the hearing of the commissioners' report, the court confirmed the report and adjudged that the drainage district be empowered to levy of the benefits assessed against all the lands in said district, not to exceed ninety per cent thereof, such amounts for taxes as should be necessary to pay the bonds issued by said district to complete the work of said district and fully put into effect the plan for reclamation.

Upon the trial of the present proceeding, Andy J. Brown testified that he made a survey of the lots in question at the instance of Mr. Winkelmeyer in October, 1931, and found that lot 3 contained 82.50 acres, and that lot 1 contained 20.08 acres. He also testified that he was chief engineer of the drainage district, and made the necessary surveys, made out a report of the plan for reclamation, and aided the commissioners in their work of assessing damages and benefits. He was unable to remember how the acreage of the lots in question was arrived at as stated in the commissioners' report, or how the error occurred in the statement of the acreage in the report.

The trial of the present proceeding resulted in a judgment reducing the benefits assessed against lot 3 to $4,702.50, and reducing the benefits assessed against lot 1 to $963.84. To reverse this judgment the drainage district has appealed to this court.

The writ of error *coram nobis,* or a motion in the nature of a writ of error *coram nobis,* lies for the purpose of obtaining a review of a judgment by the same court which rendered it with respect to some error of fact affecting the validity and regularity of the judgment. As is implied in the term itself, the writ is used to obtain a review by the court of its own judgment, as distinguished from a review by an appellate court. The writ lies to review and reverse a judgment for error of fact as distinguished from error of law. It does not lie for defenses available at the trial, nor for newly discovered evidence. It lies for error of fact, not appearing on the face of the record, which fact was unknown to the court, and which, if it had been known, would have prevented the rendition and entry of the judgment. The writ will not lie where the party complaining knew

the fact at the time of the trial, or by the exercise of reasonable diligence might have known it. Only such errors can be assigned as are consistent with the record before the court, and the court will not look into the cause of action on which the judgment was rendered, or consider any facts which might have been presented to the court on the trial of the cause, and still less any facts that were in issue and adjudicated upon the trial. The writ cannot be used to falsify the record. It lies to reverse a judgment rendered against a party after his death, or a judgment against an infant, or a judgment against a married woman, or a judgment against an insane person, such death, infancy, coverture, or insanity, being unknown to the court, at the time of rendering the judgment. It is not the office, nor within the purview, of the writ to give a new trial merely because of some latent matter of fact unknown to the court or party litigant going to the merits of the cause. The unknown fact to authorize the writ must be of such a character as would, if known, disable the court from rendering the judgment, as if, as before stated, the party was dead, or an infant, or a *femme covert*, or a lunatic. The writ may not be used as a substitute for a motion for a new trial. The latent fact unknown to the court authorizing the writ may consist in some matter of process or misprision or fault of the clerk. In other words, as we understand the authorities, the writ lies not for some unknown fact going to the merits of the cause, but for some unknown fact going to the right of the court to proceed, and which entirely defeats the power of the court to attain a valid result in the proceeding. [Simms v. Thompson, 291 Mo. 493, 236 S. W. 876; Graves v. Graves, 255 Mo. 468, 164 S. W. 496; Jeude v. Sims, 258 Mo. 26, 166 S. W. 1048; State v. Stanley, 225 Mo. 525, 125 S. W. 475; Reed v. Bright, 232 Mo. 399, 134 S. W. 653; Callicotte v. Chicago, R. I. & P. Ry. Co. (Mo.), 204 S. W. 528; Marble v. Vanhorn, 53 Mo. App. 361; Hadley v. Bernero, 103 Mo. App. 549, 78 S. W. 64; Moutier v. Sherman (Mo. App.), 25 S. W. (2d) 490; Mefford v. Mefford (Mo. App.), 26 S. W. (2d) 804; Hecht Bros. Clothing Co. v. Walker (Mo. App.), 35 S. W. (2d) 372.]

It is obvious that the facts relating to the acreage of the lands in question here alleged to have been unknown to the court go to the merits of the cause. The ultimate matter for adjudication of the court upon the hearing of the commissioners' report was the amount of the benefits accruing to the lands by reason of the improvements to be made according to the plan for reclamation. The facts relating to the acreage of the lands were facts material to the determination of these benefits. So were the facts relating to the elevation of the lands, the acreage subject to overflow, the acreage not subject to overflow, the location of the lands with respect to the drains and ditches to be made under the plan for reclamation, the fertility and

productiveness of the soil, the contour and general lay of the lands, the adaptability of the lands to cultivation, or other uses, and all the facts going to show the extent of protection afforded the lands by the improvements to be made. It is evident that all such matters have to do with the merits of the cause, with respect to which the owner of the lands had his day in court upon the hearing of the commissioners' report. To grant the relief sought in this proceeding would be to falsify the record, put in issue adjudicated facts, and retry the cause on its merits. The writ of *coram nobis* does not lie to give such relief.

Whether or not equity would give relief under the facts disclosed by this record is a question as to which we refrain from venturing an *obiter* opinion. Sufficient unto the day is the evil thereof. This is not a suit in equity, and we are not permitted to treat it as such [Jeude v. Sims, 258 Mo. 26, l. c. 42, 166 S. W. 1048.] The parties did not so treat it in the court below, but treated it as a motion in the nature of a writ of error *coram nobis*, and have so treated it here.

The Commissioner recommends that the judgment of the circuit court be reversed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed. *Becker, P. J.*, and *Kane* and *McCullen, JJ.*, concur.